The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. Our case is People of the State of Illinois v. Brandon Foster 419-0546. Would the appellate please introduce himself, state your name for the record. My name is James Waller. I'm with the Office of the State Appellate Defender. And I represent Brandon Foster. I'm sorry. Thank you. And for the appellate, Luke McNeil. Thank you, sir. You may proceed. Thank you, Your Honor. May it please the court, counsel. My name is James Waller. I'm an assistant appellate defender. It is my pleasure to represent Brandon Foster in this case. Foster appeals his conviction and asks that this court remand the case for a new trial because he was deprived the effective assistance of trial counsel. Trial counsel was ineffective in this case where they failed to move to suppress the lion's share of the state's evidence. There were colorful arguments for suppression of just about all of the evidence relied upon by the state. But the arguments are best analyzed in kind of three groups of evidence. Group A, the evidence that was obtained as a result of the seizure of the vehicle that Foster was in. B, statements Foster made post-arrest before and after a possible knowing involuntary waiver of Miranda rights. And Group C, evidence that he invoked his right to refuse consent to a search after being advised of that right by the officer. As a separate argument, counsel was also ineffective for failing to request a Frank's hearing when defense received video evidence that contradicted in relevant material statements in the complaint for a search warrant. I believe the issues are pretty well addressed in the brief. I'm happy to answer any questions about that, but I'll be largely focusing on argument one today. So on the suppression of the physical and other evidence gathered from the seizure of the vehicle, the questions are, did any seizure take place and whether that seizure was unreasonable? Warrantless seizure, rather. Here, the seizure took place when Officer Petrie blocked in the truck that the defendant was sitting in and shined his light into the cab. Both sides cite two people, V. Ludeman, in the briefs. Ludeman cleared up some confusion about the three tiers of warrantless police interaction into arrests, which require probable cause, Terry stops, which require reasonable, articulable suspicion of criminal activity, and the third, consensual encounters, wherein a reasonable individual would have felt free to terminate the encounter. If an encounter falls into the first two categories, that is, one in which somebody feels free or a reasonable person would feel free to terminate the encounter, a seizure has happened and we have to figure out if it was reasonable. That's Mendenhall and Ludeman. So the question here is, when was the vehicle seized and its occupants seized? And was that seizure reasonable in that the officer had at least reasonable, articulable suspicion of criminal activity? Again, Officer Petrie blocked in the vehicle, shined a spotlight into the cab, then according to what I understand the state's theory to be, he recognized the drivers having a warrant, got out, raised his firearm, ordered them to shove their hands. I think nobody disputes the occupants were in the vehicle were seized. I need to stop you there. You have said that the officer blocked in the vehicle, but the question is, did that happen before he shined the light into the vehicle and saw the defendant who was wanted on a warrant or after? I believe that the record indicates that happened before he shined the spotlight in. My read of his testimony was that he pulls up and looks in the rear view. Once he recognizes Kendall Wright, he pulls out, he gets out, draws his weapon, knowing Kendall to have a history of running, etc. So he pulls up and blocks the vehicle in right away. People v. Ludeman kind of indicates that as a, if not a dispositive factor, at least a large factor that courts have analyzed in determining whether seizure has taken place, whether the officers pulled in and blocked the vehicle before anything else happened. Here we have the vehicle parked at the end of a parking lot with a, I believe, chain link fence and look like from the videos cars on either side. So this is a case where a reasonable person would not have felt able to terminate the encounter because they wouldn't have been physically able to terminate the encounter. They were blocked in. Ludeman examines eight or nine cases where they find this to be a major factor. And in Ludeman itself, in the facts of that case itself, because the officer didn't block them in is one of the reasons they found that no seizure had taken place. So the seizure of the vehicle and its occupants happened as soon as the officer trapped him in and hit him with the spotlight. Any fortuitous identification of Kendall Wright and remembering that he had a warrant out for him that the officer just reviewed before his shift doesn't matter because that itself was evidence that was obtained after the seizure can be used to retroactively justify the seizure. Now if we take this... Please. Even if the vehicle was blocked, as you've suggested, defendant couldn't have got out of the truck and just walked away? I don't believe that anybody would have felt reasonably safe doing that when there's cars on either side. As a matter of case law, as I said, your honor, in Ludeman, they talk about how there have been several factual scenarios where officers pull in and block a vehicle from leaving. In every one of those, nobody's actually locking the participants or the people in the vehicle. They're not physically bound and locked into the vehicle. They're always physically able to get out, but that doesn't matter for whether or not a seizure has taken place in the vehicle and its occupants. I believe that the case law doesn't really make a lot of reference to the fact that, yes, they physically could have gotten up and walked away out of the vehicle. So I don't believe that factor matters into whether or not there was a seizure. I understand the state's theory is that once the officer saw Mr. Wright and the occupants, a seizure took place at that point. If that's the case, we should need to get into what the officer knew and when. We would need to have a hearing to explore discrepancies between, on the one hand, Officer Petrie's testimony that what drew his attention was the vehicle sitting off and running with no taillights on, and that he recognized Kendall when he saw him and remembered he had a warrant out. And on the other hand, video evidence of conversations between the officers where they talked about somebody gave them information about the truck, Officer Snyder was watching with binoculars that needed to get there at the same time, and whatever Snyder said about it's nice when you can get a group effort, when you can coordinate things, it makes life so much easier. These contradictions were ripe for a hearing on a defense counsel was given an official explanation on probable cause statements that either directly contradicted what actually happened or played such gamesmanship with wording as to elide what actually happened from the fact finder. Not moving to suppress the evidence and having that hearing resulting from the seizure was deficient performance. Counsel should have moved to suppress the evidence, both because the seizure was unlawful as a matter of law when the truck was blocked in, or because Officer Petrie's account of recognizing Kendall was problematic and needed to be explored. Completely ignoring this potentially dispositive suppression motion fell below an objective standard of reasonableness. The defendant was prejudiced by that deficient performance and that all of the state's physical evidence was admitted as a result, including the existence of the controlled substance itself, scale which may have indicated intent to distribute, an argument could be made that the cell phones which were such a big part of this trial and were on the persons of the people seized of the truck were fruit of the poisonous tree. Either way, there's a reasonable probability that the outcome of this trial would have been different had counsel moved to suppress that evidence. That issue alone should be sufficient to grant a new trial, but there were colorful arguments to suppress other evidence gathered post-arrest as well. Both officers were aware, this is group B here now, both officers were aware that Foster was intoxicated or at least severely impaired when he was taken into custody. Officer Snyder said, you seem a little intoxicated, I just want to make sure you're not going to throw up. Officer Snyder described Foster's intoxicated condition to Officer Petrie when he says he is gone. They put him in interrogation room, he passes out right away. Less than half an hour later, he's woken up to answer Petrie's questions. The answers he gave both pre and post Miranda warning were used at trial for their inculpatory value. Had counsel filed a motion to suppress these statements, the trial court would have looked at the totality of the circumstances to determine if Foster had been too intoxicated to give a voluntary waiver of his Miranda rights. These circumstances would have included the fact that he was smoking cannabis when he was arrested, that Officer Snyder believed he was intoxicated, he seemed slow to comprehend and comply with instructions at least at the beginning of the video, etc. Even the state in its closing argument says that Foster starts sobering up as we work our way through the interview. This shows the state is even aware or agrees that he was at least impaired at the beginning when the Miranda waiver occurred. Whether that impairment rises to the level of intoxication, robbing Foster of comprehension, certainly required a hearing. There's reasonable probability, again, that these statements may have been suppressed. If they had, the state would not have been able to argue, make any arguments about the cash Foster was carrying, his employment status, etc. Finally, excuse me, counsel was deficient for not moving to suppress the evidence that Foster refused to consent to the search of his phone. If counsel had moved to suppress that refusal and the trial court denied that motion, it may very well have been an abuse of discretion. That's, it's a direct extension of People v. Ely. The fact that he had just been Mirandized makes the statement even less admissible under People v. Egan. It's black letter law that the right to refuse a warrantless search includes not having the exercise of that right being used to show consciousness of guilt. The state, I believe in its response brief reasonably, does not even contest whether this was suppressible. Instead frames it into a question of trial strategy. The state points to the defense's closing arguments, showing that their But first of all, this theory is perfectly still arguable without showing that Foster doesn't want the police to have access to his phone. And secondly, it's not a sound strategy. If it's not the end of the question is whether it was a strategy question has to be a sound trial strategy. If defense counsel wrote out an affidavit saying, I was aware that the evidence was suppressible, I decided not to challenge it, an emotion, eliminate emotion suppress, he would have still rendering ineffective assistance to counsel. There's just no sound strategy in allowing consciousness of guilt of any crime, especially one that is not an alibi against the commission of the crime in question. But finally, the state argues overwhelming evidence of guilt means that Foster can't show prejudice on this issue. That begs the question, because our position is that all of the evidence, of course, in this case is admitted due to counsel's failure to suppress it. In particular, the consciousness of guilt really colors every other piece of evidence in the worst possible light, it poison and infect all the other pieces of evidence. So they're not really analyzed independently, as far as whether or not there was overwhelming evidence of guilt. Brandon Foster did not receive effective assistance of counsel in his defense, counsel's failure to move to suppress the evidence that was inadmissible as black electrical law fell below an objective standard of reasonableness and led directly to his conviction. This court should vacate his conviction for possession with intent and remand the case for new trial. And that's what we asked for in the brief. Some research afterward, as shown in People v. Hill, in the alternative, this court, I believe, could also simply remand only for a new motion to suppress hearing, the opportunity for appointed counsel to file a motion to suppress hearing. I believe this is a new trial case, but I believe that's within the court's power as well. And certainly, the remedy in a frame, to get into argument two just briefly, the remedy in a Frank's violation would be a remand just for a new Frank's hearing or the opportunity to file a motion for a Frank's hearing. It would certainly help judicial economy as well, if it was being remanded for a motion to suppress issue as well as a possible Frank's hearing. But I think a new trial is what's really called forward this type of violation of black letter law. There are no further questions. I see none. Thank you, we'll hear from you on rebuttal. Mr. McNeil. May it please the court, counsel. First, in both of defense counsel's briefs, he repeatedly uses terminology that accuses the police officers of blatantly lying, therefore accusing them either of committing perjury, testifying at trial, or lying in a sworn affidavit in a search warrant. These are pretty extreme allegations to make, especially since the record wasn't developed with the motion to suppress hearing in mind. Just to say that the police didn't testify to certain things that were irrelevant to the charges at trial does not mean that they were committing perjury on the stand or lying in a sworn affidavit. I would submit there were no instances of lying or perjury, but because again, the to show up in that particular parking lot at that particular time were completely irrelevant to whether defendant possessed crack cocaine with the intent to distribute. Officer Petrie testified he was on patrol. He saw a truck running with no lights on around midnight, but the exhaust was running. He drove behind the truck and shined his spotlight. The video does not show, nor was there testimony, that Officer Petrie stopped to shine his spotlight. We know he didn't get out of his car to shine his spotlight, but when he did shine his spotlight, he instantly recognized the driver as Kendall Wright, who had an active warrant. At that point, of course, any seizure would be valid, and at that point, the brake lights illuminate, and Petrie gets out of his squad car, presents his weapon, and arrests defendant as the passenger and Kendall Wright as the driver. This was perfectly reasonable, and there was no seizure in the brief moments that he rolled behind the car, rolled behind the truck, and illuminated his spotlight. As Ludeman points out, this would be a case like any spotlight or flashlight case where basically the officer would have to either go stumbling around in the dark at night or use his spotlight and thereby instantly making it a seizure, and of course that would lead to absurd results. I would say another way to look at this is what more minimal invasive procedure could Petrie have done? The other option would be for him to get out of his car and approach on foot and shine his flashlight into the car or the truck cab, and I would say that that would be much more invasive than simply rolling by and shining his spotlight. Mr. McNeil, you've used the phrase roll behind the truck. Is that a euphemistic way of saying he blocked the truck? No, I'm saying that's a euphemistic. He is behind the car when he shines the spotlight. We don't know if he stopped or if he was rolling by. I've seen plenty of police roll by slowly and shine their spotlight. In fact, I would say that's commonly the way that they do it. At any rate, I wouldn't call it blocking in if he's still in his automobile. He could easily keep driving. This wasn't him getting out of his car. This wasn't him posing any questions to the two in the automobile or even talking over his loudspeaker or something like that. There was a presentation of weapons later, but there was no presentation at that point, and there was only one officer. Snyder came moments later. Basically, all of the men in the hall factors are not here. Even assuming he would stop, I would say that would be an overextension calling that a seizure at that point by him just illuminating his spotlight into the cab. At any rate, none of this was testified to as to his motivations because there was no motion to suppress hearing. This is an ineffective assistance to counsel argument. This is a defendant's burden to show that the record shows that a motion to suppress hearing arguably or more than likely would have been granted. Defendant fails to do that here because the record is simply insufficient. If we do go by this record, though, and we go by the bare bones testimony of Petrie at trial, this was not a seizure until it was a valid seizure. That meaning he recognized Kendall Wright. We don't know why he recognized Kendall Wright. We don't know why he checked his criminal history or record before his shift. We don't know why he was there at that particular time because it was irrelevant to the charges being brought, and it was irrelevant to the search warrant. The Franks hearing is an especially egregious argument, basically implying that he's lying about checking Wright's record before his shift. But, again, the point of the search warrant was to have material determination of probable cause, that being for searching these phones. It had nothing to do, again, there's nothing about motivation for Petrie to be there because it didn't have to be in that sworn affidavit for the search warrant. To say that it is in there or that it's required to be in there is simply incorrect. At any rate, any motion to suppress on this record would have been denied, so counsel was not objectively unreasonable in failing to file that motion to suppress. As for the Miranda argument, the defendant was clearly not too intoxicated to comprehend or validly waive his Miranda rights. The cases cited by both the state and defendant are dealing with defendants who basically don't know what's going on or can't even talk. This defendant was an active participant. We have the convenience of the whole interrogation video in this record. He was an active participant from the beginning of the interrogation, asking valid questions of Officer Petrie throughout. He confirmed both by a nod, which was enough according to this court, an affirmative nod that he understood his Miranda rights and was waiving them, but he also followed that up with a yes. Clearly, there was a valid waiver of his Miranda rights. As to the pre-Miranda questions, the defendant somehow tries to distinguish Abdul Masih, which I cited in my brief. That case held that employment history is a routine booking question and it's not a violation of Miranda to ask that question pre-Miranda warnings. The defendant tries to distinguish this by saying that the form that the police officer was writing on in Abdul Masih is different than the form written on in this case. Of course, this is absurd. We have no idea what the form or piece of paper looked like in Abdul Masih. I would submit that the video in this case doesn't clearly show that it's a blank piece of paper, but more importantly, who cares even if it was? The questions were the same. They were routine booking questions. Clearly, employment history is a valid routine booking question. Again, any motion to suppress as to the Miranda issues interrogation video, that would be denied. Both problems of Strickland fail there as well. As to the video suppressing the portion where he refuses to consent to his phone, again, the presumption, it's the defendant's burden here. The courts will presume the trial had a legitimate strategy for filing or not filing a motion to suppress. It's easy to spot here. There's no dispute that defendant was a drug dealer, but defendant's theory was that he was a cannabis dealer and that the crack in the truck was Wright's, not his. Of course, it had no bearing, no harm for him to leave this portion of the video in there. It would make sense either way, but this does not overcome the presumption that trial counsel had a legitimate trial strategy to leave this. At any rate, defendant wasn't prejudiced because like I said, the strategy was the same. Again, as for the Franks hearing, this was a completely speculative argument. If the court has no other questions, that's all I have. One more thing about the Franks hearing, the defendant must show, if he needs a Franks hearing, defendant must show that the information omitted was material to the determination of probable cause and that it was omitted for the purpose of misleading the magistrate. That simply can't be done in this case. There's nothing about Petrie's motivations that has anything to do with the materiality of the determination of probable cause in this case, so any Franks hearing motion would have been denied and counsel was not ineffective for failing to file that as well. If I have no questions, I would ask this court to affirm. I see no questions, so we'll hear from Mr. Waller on rebuttal. Thank you, Your Honor. To answer more directly Justice Turner's question earlier, and I apologize, and it actually touches on what Mr. McNeil was speaking of, Officer Petrie testifies, and this is R-224 in the record. So, I knew Kendall had an active warrant. I knew his history. He has a history of possessed firearms, narcotics, fleeing from officers. When I shined my spotlight and he saw his police, the brake lights illuminated, at which time I thought he was going to run. We know that at the time that he's behind him and shining the spotlight in, he's behind the car. He didn't check it, keep going. He says he got out and raised his firearm because he was afraid of getting backed into. So, he was physically blocked in. You have the page before that, Mr. Waller, where he says that he sees the exhaust coming from the occupier. Obviously, if it wasn't occupied, I wanted to figure out why it was running. At that time, I observed the driver who immediately observed as Kendall Wright to have an active warrant. Then he gets into the description of what you've recited just a moment ago. If you look at it from its chronological place in the testimony, he first shines the spotlight, sees it's Kendall Wright, and then he's behind the truck. So, when he sees that the truck is going to back up, but possibly into him, that's when he exits his vehicle. But it's not clear from the record that he's blocked, supposedly, the vehicle in before he even identifies the driver. Well, from the testimony you just read, and I read it similarly, except that there's no description of any action or motion he takes between being behind them and seeing Kendall Wright and getting out of his vehicle. So, it seems to be of one action. He pulls in behind, shines his light, makes the identification, as purportedly, and then gets out and reacts to the brake lights and everything else. He doesn't say, so then I pulled back or then I moved, like nothing happens between him being behind the vehicle shining his light on, other than his recognition of Kendall Wright. What you're arguing is you want to create a rule that if the police officer pulls up, let's say, for example, in a basic community caretaking type function and just pulls up to see if everything's okay, that's blocking, that's a seizure. Ergo, everything from that point on has to meet the constitutional requirements or it's inadmissible. Your Honor, I believe that that is largely already the rule from Ludeman. That is one of the, I mean, it's a multi-factor analysis, right? The circumstances are always what's going to matter in a particular case. Ludeman spends so much time on so many different cases where whether the officer blocked the vehicle in is almost as positive. It's at least a major factor. It's at enough cases have turned on that issue that counsel should have filed the motion and should have had a hearing. It was meritorious, had a reasonable chance of being granted, just like the other eight issues or eight cases that are cited by the author of Ludeman. The question, counsel discussed the Mendenhall factors. The question is whether or not an encounter becomes a seizure if the officer, through physical force or show of authority, restrains the liberty of the occupant. By blocking him in, he restrains the liberty. Certainly by shining a patrol car spotlight into a vehicle, I think also counts as a show of authority. They were restrained. I see that my time has expired. I'm happy to answer any other additional questions. I certainly have much more that I can say, but I don't want to take up more time than I have here. Thank you, counsel. My computer shut off, but I immediately got on my laptop, or excuse me, my iPad, so I have heard your argument. We'll take this matter under advisement and recess for the day. Thank you.